IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | |
|---|---|
| THE CINCINNATI INSURANCE COMPANY,<br><br>    Plaintiff,<br><br>vs.<br><br>LAURIE W. COLE, as Executrix of the Estate of JUDITH E. WICKHAM, and CHAD WELLS,<br><br>    Defendants. | CASE NO. 4:20-CV-20 (CDL) |

O R D E R

In this declaratory judgment action, Plaintiff The Cincinnati Insurance Company seeks a declaration that its insured, Judith Wickham, never requested uninsured/underinsured motorist ("UM/UIM") coverage when she obtained her umbrella liability insurance policy, and thus no such coverage exists for claims arising from an automobile collision in which she died. The undisputed facts support Cincinnati's contention that no excess UM/UIM coverage exists under its policy. Therefore, Cincinnati's motion for summary judgment (ECF No. 33) is granted, and the motion for summary judgment filed by Wickham's surviving heirs and the executrix of her estate, who are Defendants in this action (ECF No. 32), is denied.

SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A fact is *material* if it is relevant or necessary to the outcome of the action. *Id.* at 248. A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Id.*

FACTUAL BACKGROUND

Judith Wickham was involved in a motor vehicle collision that resulted in her death. The executrix of her estate and her surviving heirs maintain that she had excess UM/UIM coverage with Cincinnati. The record establishes the following.

In December 2008, Wickham applied for umbrella insurance with Cincinnati through her insurance agent, Yates & Woolfolk Insurance. Am. Compl. Ex. 4, 2008 Personal Umbrella Application 1, ECF No. 27-4 [hereinafter Application].[1] Her Application

---

[1] The umbrella and underlying policies also listed Judith's husband, Neal Wickham, but he predeceased her.

indicated that Wickham sought a new policy, not a quote. Cincinnati offered Wickham optional excess UM/UIM coverage, which she rejected as follows:

> 8. **Optional Excess Uninsured / Underinsured Motorists Coverage** (complete only if main residence is in Arkansas, Florida, Georgia, Iowa, Kansas, New Hampshire, Tennessee, Vermont or Wisconsin. Also please complete bottom of application.)
> Excess UM & UIM Coverage is available in increments of $1 million up to the policy limit. Primary UM/UIM limits must equal the primary Automobile Bodily Injury Limits to qualify.
> Is coverage desired?   Yes ☐   No ☒   If "Yes", limit desired   $ _____

*Id.* at 2. She confirmed this rejection of excess UM/UIM coverage in a separate section of the Application as follows:

> **PERSONAL UMBRELLA EXCESS UNINSURED / UNDERINSURED MOTORIST COVERAGE OFFER AND OPTION SELECTION**
> **IMPORTANT:**
> Excess Uninsured / Underinsured Motorists Coverage (UM/UIM) is available under your Umbrella or Excess Liability Policy. This is our offer to you of Uninsured / Underinsured Motorists Coverage options under this policy.
> This form allows you two options. You may select Uninsured / Underinsured Motorists Coverage in limits that are less than the liability limits of your policy or reject this coverage entirely.
> Keep in mind that if coverage is accepted, you must maintain full primary Uninsured / Underinsured Motorists Coverage limits equal to the Automobile Liability limits scheduled as underlying insurance on your policy or endorsement.
> **Note:** This form does not need to be completed if you desire Excess UM/UIM limits equal to your Umbrella or Excess Liability policy limits.
> Please indicate your instructions by making an entry [X] in the appropriate box below:
> ☒   I reject Excess Uninsured / Underinsured Motorists Coverage under this policy; or
> ☐   I hereby accept Excess Uninsured / Underinsured Motorists Coverage at the limit indicated below, which is lower than this policy's limit:   $ _____
>                                                                                        (Increments of $1,000,000 only)

*Id.* Defendants observe that the box next to the "I hereby accept" excess UM/UIM coverage option appears to be whited out, suggesting that Wickham checked that box and someone altered it. Douglas Dep. 46:11-19, ECF No. 38-1. The Yates & Woolfolk representative who helped Wickham complete the Application does not recall who whited out the box or when it happened; she testified that Wickham possibly checked the "I hereby accept" box and that someone later changed it, although it is also possible that the box was whited out before Wickham signed the application. *Id.* at 58:22-60:9, 69:25-70:7. There is no indication that any amount of excess

3

UM/UIM coverage was ever specified, and the Yates & Woolfolk representative testified that "there would have been an additional charge for additional excess" UM/UIM coverage if that selection had been made. *Id.* at 51:22-53:18.

Based on the coverage selections, which did not include the declined excess UM/UIM coverage, the total premium for the umbrella coverage was $135. Application at 2. The formula Cincinnati used to calculate this premium included $0 for excess UM/UIM coverage premiums. Salerno Dep. Ex. 9, Rating Calculations 1, ECF No. 40-10. Consistent with the Application and these calculations, the Yates & Woolfolk representative testified that Wickham never sought, was quoted for, or paid for excess UM/UIM coverage. Douglas Dep. 76:5-23. It is undisputed that Wickham only paid $135 for her initial umbrella policy. Defs.' Mot. for Summ. J. Ex. 1, 2009 Premium Summary 1, ECF No. 32-3. The umbrella premium worksheet, which breaks down each component of the premium, however, only adds up to $126, not the $135 that Wickham was charged. Salerno Dep. 26:2-27:3, ECF No. 40-1; Salerno Dep. Ex. 17, Umbrella Work Sheet, ECF No. 40-13. Cincinnati states that the minimum premium for umbrella coverage is $135, explaining the $9 difference between the worksheet and the ultimate charge for the premium. Salerno Dep. 26:2-27:3. No evidence has been presented to contradict this assertion.

4

When the policy took effect in January 2009, Cincinnati sent Wickham a policy package, which included a declarations page describing the policy's coverage, the policy, and another copy of the excess UM/UIM selection form. Salerno Dep. Ex. 2, 2009 Policy Package, ECF No. 40-3. The declarations page listed the $135 total umbrella policy premium and made no reference to the selection form in the package.[2] *Id*. at 2. The declarations page likewise did not include any excess UM/UIM coverage.

The policy includes a merger clause that makes clear that it "contains all the agreements between [Wickham] and [Cincinnati] concerning the insurance afforded" and that the "policy's terms can be amended or waived only by an endorsement issued by [Cincinnati] and made a part of this policy." *Id*. at 12, § III, ¶ 4. It is undisputed that no excess UM/UIM endorsement was included in the policy.

The package did include a form entitled "Personal Umbrella Excess Uninsured/ Underinsured Motorist Coverage Offer and Option Selection Form." *Id*. at 3. This form was substantively identical

---

[2] The declarations page also refers to an "Excess Uninsured/Underinsured Motorist Coverage Exclusion," Form UX324, in the umbrella policy. 2009 Policy Package at 2. While Wickham's renewals have a copy of this exclusion form UX324, which makes clear that the umbrella policy did not have excess UM/UIM coverage, the initial umbrella policy in the record does not include the exclusion form to which it refers. *See, e.g.*, Pl.'s Mot. for Summ. J. Ex. 6, 2019 Policy Package UX324, ECF No. 33-7 at 24 (endorsing a change to the umbrella policy excluding excess UM/UIM coverage). However, Cincinnati's representative testified that this exclusion form was included in the initial policy package. Salerno Dep. 112:8-12, 127:6-12.

5

to the form that was included in Wickham's original Application for insurance. Both forms have a space for the applicant to expressly reject excess UM/UIM coverage and a space for the applicant to request certain limits of excess UM/UIM coverage if they do not seek the maximum limits. If the applicant seeks the maximum limits, both forms indicate that the "form does not need to be completed if [Wickham] desire[s] Excess UM/UIM limits equal to [her] Umbrella or Excess Liability policy limits." *Id.* Although Wickham clearly rejected excess UM/UIM coverage in her original Application, she did not enter anything on the form that was included with her policy package after the policy was issued. Defendants argue that this inaction created excess UM/UIM coverage notwithstanding Wickham's express rejection of the coverage in the original Application.

When Wickham annually renewed her Cincinnati umbrella policy, she never modified her excess UM/UIM selection. Every year, the formula Cincinnati used to calculate the renewal premium included $0 for excess UM/UIM coverage premiums. Rating Calculations at 2-11.

Cincinnati initiated this diversity action seeking a declaration that Wickham did not have excess UM/UIM coverage when she died. Defendants counterclaim that Cincinnati breached its insurance contract by failing to provide excess UM/UIM coverage under the umbrella policy.

6

DISCUSSION

Cincinnati argues that because Wickham did not select or pay consideration for excess UM/UIM coverage in her initial policy or any renewal, no such coverage was ever issued. Defendants respond that Wickham did select excess UM/UIM coverage and that her annual umbrella policy premium constituted consideration.

The first question is whether Wickham selected excess UM/UIM coverage in the Application. The undisputed evidence establishes that she did not. In fact, she expressly rejected it in two separate places. She checked the "No" box in response to the question whether she wanted optional excess UM/UIM coverage up to the policy limit, and when given the opportunity to select excess UM/UIM limits less than the policy limit, she left the "limit desired" line blank. Application at 2. In a separate place in the Application, she checked the box next to "I reject Excess Uninsured/Underinsured Motorists Coverage under this policy." *Id.* Although the box immediately under that clearly checked box, next to the phrase "I hereby accept" excess UM/UIM coverage," appears to have been altered in some way, it is pure speculation as to how the alteration occurred. It could have been marked by mistake and then whited out. What is clear is that the box above it indicating a rejection of excess UM/UIM coverage is clearly marked and the box accepting coverage contains no mark. It is also significant that the line where the applicant must state the desired amount of

7

excess UM/UIM coverage under that selection is blank, thus supporting the conclusion that Wickham did not request excess UM/UIM coverage in her original Application and in fact expressly rejected it.

Counsel for Defendants argues that even if Wickham expressly rejected excess UM/UIM coverage in her original Application, she somehow accepted such coverage by inaction after the policy was issued. In support of this creative argument, counsel relies upon the blank excess UM/UIM selection form that was included with the issued policy package, substantively the same form on which Wickham had rejected excess UM/UIM coverage prior to the issuance of the policy. Counsel selectively isolates one phrase on that form that indicates that the insured did not need to do anything if she desired excess UM/UIM coverage equal to her umbrella or excess liability policy limits. And because Wickham did nothing, she somehow gets coverage. But she did not do nothing. She previously rejected excess UM/UIM coverage clearly and unequivocally. The policy was issued and the premium assessed based upon that rejection. The language upon which counsel relies, when read in context, obviously means that if the insured requested excess UM/UIM coverage and if she wanted limits equal to her umbrella limits, then she did not need to fill in the rest of the form that allowed her to request lower limits. Here, it is undisputed that she never requested excess UM/UIM coverage. In fact, she expressly

rejected it. Thus, her inaction is consistent with having not sought such coverage. Furthermore, the blank form is not a part of the policy. The declarations page has no mention of excess UM/UIM coverage being included in the policy. 2009 Policy Package at 2; see *Simalton v. AIU Ins. Co.*, 643 S.E.2d 553, 555 (Ga. Ct. App. 2007) (reading the declarations page alongside the automobile insurance policy to define the policy's coverage). Nor do any other parts of the policy support the conclusion that excess UM/UIM coverage was included. The policy's merger clause states that the policy reflects all agreements between the parties concerning the coverage afforded, and the policy could be "amended or waived only by endorsement issued by [Cincinnati] and made part of this policy." 2009 Policy Package 12 § III, ¶ 4. Wickham certainly could not create excess UM/UIM coverage through her inaction under the circumstances presented here. But even if there was an offer and an acceptance of excess UM/UIM coverage, which the Court finds there was not, the record establishes that any such agreement lacked consideration.

"An insurance policy is a contract." *Haulers Ins. Co. v. Davenport*, 810 S.E.2d 617, 619 (Ga. Ct. App. 2018). And a premium is consideration for an insurance contract. O.C.G.A. § 33-24-1(2) (defining "premium" within Georgia's insurance statutes); see *Insurance Premium*, Black's Law Dictionary (11th ed. 2019) (defining an insurance premium as "the periodic payment required

to keep an insurance policy in effect"). Without consideration, a contract is unenforceable. O.C.G.A. § 13-3-40(a) (describing the essential nature of consideration to enforceable contracts); *accord Newell Recycling of Atlanta, Inc. v. Jordan Jones & Goulding, Inc.*, 731 S.E.2d 361, 364 (Ga. Ct. App. 2012) (same). So, unless the required premium is paid, there is no contract for insurance coverage. *See Henson v. Dixie Fin. Corp. of Ga.*, 296 S.E.2d 593, 595 (Ga. 1982) (stating, while a "contract may contain several promises . . . each must be supported by consideration").

The record establishes that Wickham did not pay a premium for any excess UM/UIM coverage. Her premium of $135 was based upon her rejection of excess UM/UIM coverage in her original Application. It only covered the standard umbrella coverage she procured.[3] Cincinnati assessed nothing for excess UM/UIM coverage because it was rejected by Wickham. It likewise never made a charge for excess UM/UIM coverage on any of the renewals of her umbrella coverage.

---

[3] Defendants argue that Cincinnati charged a higher premium than Wickham's coverage selections required. The evidence they cite to support this argument, however, makes clear that Wickham's basic coverage selections did not meet the minimum premium Cincinnati charged for umbrella policies; had Wickham purchased excess UM/UIM coverage, it would have been added to this minimum premium. *Compare* Salerno Dep. 26:2-22 (outlining how Cincinnati calculated minimum premiums), *with* Rating Calculations at 1 (calculating a basic coverage premium of $126, calculating total annual applicable minimum premium as $135, and adding $0 in excess UM/UIM coverage to the minimum premium).

Lawyers tend to complicate things sometimes. The record here clearly establishes what the Yates & Woolfolk representative explained: Wickham never requested excess UM/UIM coverage, was never quoted for it, and never paid for it. There is simply no factual evidence in the record that genuinely disputes this testimony or the other evidence that corroborates it. No contract existed here for excess UM/UIM coverage. There was no valid offer and acceptance for it, and even if there was, it lacked consideration.

## CONCLUSION

Cincinnati's motion for summary judgment (ECF No. 33) is granted and Defendants' motion for summary judgment (ECF No. 32) is denied. Cincinnati is entitled to a declaration that no excess UM/UIM coverage exists under its policy for the accident giving rise to the death of Judith Wickham.[4]

IT IS SO ORDERED, this 11th day of April, 2022.

S/Clay D. Land
CLAY D. LAND
U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA

---

[4] Defendants' motion to strike (ECF No. 23) and motion for hearing (ECF No. 44) are denied as moot.